**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 13-cv-3158-RM-KMT

MANUEL OLMOS,

    Plaintiff,

v.

ERIC HOLDER, JR.,

    Defendants.
_____

**ORDER**
_____

This matter is before the Court on the Application of Petitioner Manuel Olmos for a Writ of Habeas Corpus filed November 20, 2013 (the "Application"). A hearing was held on Mr. Olmos's Application on January 9, 2014, at which this Court orally granted the Application and ordered that Mr. Olmos receive an individualized bond hearing within 10 days of that date. Below, the Court sets forth its reasoning for granting this relief.

**I. Background**

Mr. Olmos is a citizen and national of Mexico. Mr. Olmos last entered the United States near Laredo, Texas in approximately 1995. Overall, he has been in the United States for about 20 years. He first came to the attention of the immigration authorities due to his 2011 arrest on a charge of driving under restraint. A detainer was lodged against Mr. Olmos, and he was eventually taken into Immigration and Customs Enforcement ("ICE") custody. ICE determined that he was removable under 8 U.S.C. § 1182(a)(6)(A)(i) as an alien present in the United States without being admitted or paroled. Nonetheless, he was released on a $10,000 bond and enrolled in the "ATD"

program. As explained at the hearing, ATD is an "alternative to detention" program which required Mr. Olmos to wear an ankle monitor and to periodically report in person to the local immigration office. By Mr. Olmos' account, and the government does not dispute this, he complied in full with the program, and checked in as required. It appears as if he physically checked in with immigration either two times per week or every other week. The government said at the hearing that the purpose of the program was to "monitor [Mr. Olmos] more closely," particularly any "sort of new offenses that he may have committed."

At the time of his 2011 admission into the ATD program, there was pending against Mr. Olmos a felony charge relating to check forgery. This matter was known to ICE at the time Mr. Olmos received bond. Also known were 2009 convictions for domestic violence and violation of court orders.

In early December 2012, Mr. Olmos pled guilty to a charge of forgery of government issued documents in state court, thereby resolving the felony charge that had been pending at the time Mr. Olmos was bonded by ICE in 2011. Sentencing was set for April 2013. ICE was aware of this event or should have been. Thereafter, around December 22, 2012, Mr. Olmos was arrested for two additional felony offenses, identification theft and providing false information to a pawnbroker. As to these matters, Mr. Olmos was released on bond by the state courts. He also remained on ICE bond and continued to report as directed.

On April 19, 2013, Mr. Olmos returned to court for sentencing on the charge which he resolved by plea in December 2012. On that same occasion, he pled guilty to the additional offenses for which he was arrested on December 22, 2012. Mr. Olmos received a sentence of probation on all three charges of conviction. That same day, he left the courthouse and returned home.

On April 25, 2013, Mr. Olmos reported to his local immigration office as part of his regular—and by now routine—check-ins as required under his previously imposed ATD program. ICE ran a routine criminal records check and concluded that Mr. Olmos had now been convicted of two crimes of moral turpitude. ICE determined that he should be detained under 8 U.S.C. § 1226(c) and revoked his bond. Mr. Olmos sought review by an immigration judge who, on June 13, 2013, found that he had no jurisdiction to conduct a bond hearing.

Mr. Olmos has been in custody since April 2013. He challenges the Attorney General's authority to detain him under 8 U.S.C. § 1226(c) without a bond hearing by application for writ of habeas corpus. Mr. Olmos has been and continues to be confined in ICE custody at the Aurora Detention Facility in Aurora, Colorado. This facility is privately run by the GEO Group, Inc., which has a contract with ICE.

This Court has subject matter jurisdiction under § 2241 because Mr. Olmos is detained within its jurisdiction in ICE custody. "[F]or core habeas petitions challenging present physical confinement, jurisdiction lies only in one district: the district of confinement." *Rumsfeld v. Padilla,* 542 U.S. 426, 443 (2004); *see also United States v. Scott,* 803 F.2d 1095, 1096 (10th Cir. 1986) ("A § 2241 petition for a writ of habeas corpus must be addressed to the federal district court in the district where the prisoner is confined."). Mr. Olmos asserts both that his mandatory detention is not statutorily authorized and that it violates the Due Process Clause of the Fifth Amendment of the Constitution. There is no challenge as to the Court's jurisdiction.

**II. Analysis**

*A. Proper Respondent*

Mr. Olmos' *pro se* petition was served on multiple individuals beyond Attorney General Eric Holder, Jr. In its response to Mr. Olmos' petition, the government included a footnote arguing

that all respondents other than Johnny Choate, the warden of the Aurora Detention Facility, should be dismissed as improper respondents as only Mr. Choate is Mr. Olmos' physical custodian. At the hearing on this matter, the government made clear that this was not a point of emphasis for the government. The Court agrees that it should not be a point of emphasis and will, accordingly, address the matter only briefly.

The Court disagrees that Mr. Choate is the only proper respondent. Indeed, he lacks any ability to afford Mr. Olmos the only relief which the Court could order in this matter—that Mr. Olmos be given an individualized bond hearing. To dismiss all other respondents other than Mr. Choate would thus be to cripple the Court's ability to provide relief and require it to embark upon a series of successive orders where, like the judicial equivalent of the classic three shells and a pea game, the Court would be trying to determine where the "correct respondent" was at a given moment in time. Rather than engage in such ritualistic futility, the Court instead adopts the well-reasoned and thorough analysis of Judge Christine Arguello in *Sanchez-Penunuri v. Longshore* and *Castillo-Hernandez v. Longshore*, where she considered the same issue in two recent cases. No. 13-cv-02586-CMA-CBS, 2013 WL 6881287 (D. Colo. Dec. 31, 2013); No. 13-cv-02675-CMA-BNB, 2013 WL 6840192 (D. Colo. Dec. 27, 2013).

Notwithstanding the foregoing, the Court did at the hearing dismiss the Application as against three respondents – Colorado Attorney General John Suthers, ICE counsel Corina Almeida, and John Kerry, the Secretary of State, erroneously denominated by Mr. Olmos as the Secretary of Homeland Security. In light of the fact that the Court has retained as respondents the Attorney General, Mr. Choate, the ICE Field Office Director and the ICE Director, the dismissed respondents are either unnecessary or improper.

*B. Merits*

As described previously, Mr. Olmos is being held without a bond hearing based on a determination that he is subject to mandatory detention under 8 U.S.C. § 1226(c). That section is an exception to the general rule of individualized bond hearings as set forth in 8 U.S.C. § 1226(a).

Section 1226(c) provides:

Detention of criminal aliens

(1) Custody
The Attorney General shall take into custody any alien who - -

   (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,

   (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,

   (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence to a term of imprisonment of at least 1 year, or

   (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,

when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

(2) Release
The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

8 U.S.C. § 1226(c).

Interpreting Mr. Olmos' *pro se* application with some leniency, Mr. Olmos contends that he is not subject to § 1226(c) because he was not taken into custody by ICE "when…released" from state custody.  And if § 1226(c) does not apply, then the authority to provide an individualized hearing as set forth in § 1226(a) entitles him to a bond hearing before he can be detained. Additionally, regardless of the mechanism by which he is being detained, Mr. Olmos contends that his due process rights under the Fifth Amendment are being violated by his continued detention.

The government advances three primary arguments in opposition to the statutory aspects of the Application.  First the government argues that the plain meaning of § 1226(c) does not require that the alien be taken into custody immediately upon release, but permits mandatory detention whenever the alien comes into ICE custody following his release—however long that delay might be.  Second, and in the alternative, the government argues that there are ambiguities[1] within § 1226(c) which, once recognized, trigger deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc*. ("*Chevron*")  to the interpretation of § 1226 made by the Board of Immigration Appeals ("BIA").  467 U.S. 837 (1984).  In that the BIA has interpreted the statute in *In re Rojas* ("*Rojas*") as permitting mandatory detention regardless of when a qualifying alien comes into ICE custody, the government argues that *Chevron* requires that I defer to that interpretation.  23 I. & N. Dec. 117 (BIA 2001).  Third, and again in the alternative, the government argues that even if there is no ambiguity in § 1226(c) and even if the statute commands that certain criminal aliens be taken into custody at the time of release, under the so called "better late than never" principle, the Court should conclude that the right to detain is not lost solely by virtue of

---

[1] The government proffers two potential ambiguities.  In simple terms, the government alleges that the phrase of "when the alien is released," as contained in § 1226(c) is ambiguous and that the phrase "an alien described in paragraph (1)" as contained in § 1226(c)(2) is also ambiguous.  The government characterizes the former as "linguistic ambiguity" and the latter as "structural ambiguity."  Although the labels seem more designed to impart gravity to the claims of ambiguity than to meaningfully distinguish two distinct allegations of ambiguity, the Court will utilize the classification labels created by the government in this Order.

delay in obtaining custody of criminal aliens. As to the constitutional claim, the government relies on *Demore v. Kim*, 538 U.S. 510 (2003).

### A. Linguistic Ambiguity and Immediacy of Detention

In a previous Order, *Baquera v. Longshore*, this Court found that the plain language of the pertinent statute was clear, and that there was no ambiguity which required the Court to conduct a *Chevron* analysis. 948 F. Supp. 2d 1258 (D. Colo. 2013). As to the aforementioned linguistic ambiguity – ambiguity as to the meaning of "when…released" – this Court stands by its previous analysis and points to that decision for a fuller explanation of its reasoning on this issue. In short, the Court finds that 8 U.S.C. § 1226 gives immigration officials the authority to release aliens *except for* a limited group of aliens who are required to be mandatorily detained. This group consists of certain aliens taken into custody "when…released" from criminal custody. Section 1226(c) is an exception to a general rule giving immigration officials the power to determine whether or not aliens will be released on bond, and the "when….released" phrase is a directive that certain aliens should be continuously detained from the time of release from criminal custody through their removal proceedings. But if the alien is not immediately and continuously detained, and is instead released back into the general population, then both the rationale and application of the exception no longer apply. Immigration authorities still have the power to detain Mr. Olmos, and may still have the power to detain him for long periods of time until final removal, but he is entitled to a bond hearing conducted by an immigration judge pursuant to § 1226(a) as he was not taken into custody "when…released" as required by § 1226(c)(1).[2]

In *Baquera*, this Court found it unnecessary to decide "how immediate the detention must be – whether absolute continuous custody is required, or some standard of reasonableness should be

---

[2] Implicit in the Court's finding is rejection of the government's contention that "when…released" means at any time "after…release" or any similar construction.

applied to a brief gap in custody – in order for mandatory detention to apply." *Id*. at n.2. In that case, the gap between release from custody and detention was 10 years. In Mr. Olmos', as noted above, the gap is but 6 days. Nevertheless, this Court again finds it unnecessary to determine exactly how immediate the detention must be, or whether absolute continuous custody is required, to decide the outcome here. By any construction, Mr. Olmos was not taken into custody "when…released." As for some flexible or reasonableness overlay on the "when…released" language, none is appropriate here. Mr. Olmos was subject to an ICE bond, was being monitored, and was reporting regularly at the time of his April 2013 convictions. He appears to have been fully compliant with reporting requirements and to have provided information in response to any and all inquiries made by ICE. Despite the fact that he was reporting regularly and was allegedly being monitored for "any sort of new offenses he may have committed," ICE apparently either did not actively monitor him or did not inquire about his court hearings. Regardless, ICE did not take him into custody "when…released." Instead, ICE simply waited for Mr. Olmos to come to them as he had done a multitude of times before, and they ran a routine records check. Mr. Olmos was not taken into custody "when…released," he was not continuously detained, and thus he is not an alien whose mandatory detention is authorized by § 1226(c).

   *B. Structural Ambiguity*

In *Rojas*, the BIA identified no "linguistic" ambiguity with respect to the "when…released" language of § 1226(c)(1), suggesting that the term meant immediately upon release. 23 I. & N. Dec. 117, 120-21 (BIA 2001). However, the BIA identified a different perceived ambiguity in § 1226(c)(2) of the statute. [3] The BIA noted that § 1226(c)(2) allows for the release of an alien

---

[3] The government in this matter repeatedly appears to be putting forth the BIA's interpretation of the statute as <u>evidence</u> of some sort of ambiguity in the statute. However, under the *Chevron* framework, I start with the language of the statute itself, and if it is clear, I do not even reach the issue of whether the agency's interpretation of the statute is

"described in paragraph 1 only if" certain conditions are met, and that this language did not "unambiguously tell us whether it encompasses the 'when the alien is released' clause in…(c)(1) or merely references the four categories of noncitizens described in subparagraphs (A) through (D)." *Id*. at 120.

In short, the BIA looked to § 1226(c)(2) as the authority to detain (by restricting who may be released) and concluded that its limited release authority for "an alien described in paragraph (1) is the key language of the statute. And according to the BIA, "an alien described in paragraph (1)" means only those referenced in § 1226(c)(1)(A)-(D) without regard to the "when… released" language. The government argued at the hearing that this is a plausible reading of the statute which discloses a "structural ambiguity." The government argues that subsection (c)(1) includes an adjectival clause, describing "who" is deportable, and that that adjectival clause ends with the conclusion of subparagraph (D). The "when…released" portion, the government reasons, is an adverbial clause, not a descriptive clause defining who may be mandatorily detained, but rather simply part of the instruction to the Attorney General "to take" persons "into custody." Thus, by this logic, where subsection (c)(2) references aliens "described in" paragraph 1, it can only invoking an adjectival reference since aliens (a noun) can only be grammatically described by adjectives.

While the grammatical formalism of this argument is interesting, this Court ultimately finds it unpersuasive. Again, the first step of the *Chevron* framework requires this Court to look to the plain meaning of the statute, "start[ing] with its language, giving effect to its 'most natural reading.'" *United States v. Villa*, 589 F.3d 1334, 1343 (10th Cir. 2009) (quoting *United States v. Ressam*, 553 U.S. 272 (2008)) (citation omitted). Reading 8 U.S.C. § 1226 in its entirety points to a very different conclusion than the one advanced by the BIA in *Rojas* – that subsection (a) is the

---

reasonable. Courts do not look to the agency for the determination of whether the statute is ambiguous, and the government's position would seem to add an undue level of deference to an agency's reading of a statute.

broad default position authorizing bond hearings for aliens. Section (c) is an exception to the general rule and describes those who "shall" be taken into custody "when…released" and thereafter detained. Of that subgroup, a smaller subset – those involved in witness protection or assisting in criminal investigations – may nonetheless be released.

The Court rejects this inventive notion of an ambiguity, whether "structural" or not. Subsection (c)(2) is not the source of the detention authority with respect to certain criminal aliens – subsection (c)(1) is. And even if the government were correct, subsection (c)(2) does not – implicitly, structurally or otherwise – refer simply to aliens referenced in subsection (c)(1)(A) – (D). In the view of the Court, aliens "described in paragraph (1)" are those referenced aliens taken into custody "when…released." It is the natural reading of the statute.

Not only does the Court view the government's interpretation of § 1226(c) as a forced and unnatural reading, but the Court also views it as ironically contorting the "structure" of § 1226 as a whole. Accepting the government's argument here would mean that the broad principle governing release lies not in the earliest sections of the statute, but is buried deep in the subsection of a later section. Moreover, by the government's logic, the authority to take into custody and detain is found and controlled not by those statutory provisions found under the heading "Custody," but rather under statutory provisions labelled "Release." It should already be clear that I disagree with the government's notion that the "when…released" directive is "merely aspirational." (ECF No. 10 at 2.) The government's position would force me to reduce the "Custody" section of the statute to a definitional section for the "Release" provisions and/or a mere invitation to the Attorney General to take certain aliens into custody "when…released" with no statutory consequence whatsoever for failing to do so. This Court cannot and does not find this to be a natural reading of this statute.

As stated earlier, this Court simply does not see § 1226 as ambiguous. It confers a broad principle of release upon the agency's discretion at the outset, then defines a limited exception where certain criminal aliens must be mandatorily detained under circumstances described in the subsection captioned "Custody" (§ 1226 (c)(1)) and then a further exception to that custodial requirement within the subsection captioned "Release" (§ 1226 (c)(2)).

"*Chevron* does not suggest that courts are to search statutes, overturning linguistic rocks and brush, in the hope of discovering some arguable ambiguity, which would then justify deference to an administrative construction." *Castillo-Hernandez v. Longshore,* No. 13-CV-02675-CMA-BNB, 2013 WL 6840192, at *14 (D. Colo. Dec. 27, 2013) (quoting *Abbott Labs. v. Young,* 920 F.2d 984, 994-95 (D.C. Cir. 1990)). And that is precisely what the government seeks to have the Court do here. Having the weight of district court authority against it on the issue of mandatory detention based on the meaning of "when…released,"[4] it now seeks to craft a new and different ambiguity.

I find that the plain meaning of the statute is clear both linguistically and structurally,[5] and that aliens not taken into custody by ICE and detained "when…released" from custody for the qualifying criminal charge are entitled to a bond hearing.

---

[4] *E.g.*, *Sanchez-Penunuri v. Longshore*, No. 13-cv-02586-CMA-CBS, 2013 WL 6881287 (D. Colo. Dec. 31, 2013); *Castillo-Hernandez v. Longshore*, No. 13-CV-02675-CMA-BNB, 2013 WL 6840192 (D. Colo. Dec. 27, 2013).; *Deluis–Morelos v. ICE Field Office Director,* No. 12CV–1905JLR, 2013 WL 1914390 (W.D.Wash. May 8, 2013); *Castillo v. ICE Field Office Director,* 907 F.Supp.2d 1235 (W.D.Wash.2012); *Bogarin–Flores v. Napolitano,* Civ. No. 12CV0399 JAH WMC, 2012 WL 3283287 (S.D.Cal. Aug. 10, 2012);*Rosario v. Prindle,* No. 11–217, 2011 WL 6942560 (E.D.Ky. Nov. 28, 2011),*adopted by* 2012 WL 12920 (E.D.Ky. Jan. 4, 2012); *Rianto v. Holder,* No. CV–11–0137–PHX–FJM, 2011 WL 3489613 (D.Ariz. Aug. 9, 2011);*Louisaire v. Muller,* 758 F.Supp.2d 229 (S.D.N.Y.2010); *Monestime v. Reilly,*704 F.Supp.2d 453 (S.D.N.Y.2010); *Khodr v. Adduci,* 697 F.Supp.2d 774, 778 (E.D.Mich.2010); *Scarlett v. U.S. Dep't of Homeland Sec.,* 632 F.Supp.2d 214, 219 (W.D.N.Y.2009); *Bromfield v. Clark,* No. C06–0757–RSM, 2007 WL 527511 (W.D.Wash. Feb. 14, 2007); *Zabadi v. Chertoff,* No. C05–03335, 2005 WL 3157377 (N.D.Cal. Nov. 22, 2005).

[5] Again, implicit in my rejection of the so-called structural ambiguity is rejection of any claim that the plain meaning of an "alien described in paragraph (1)" is exclusively an alien who falls within the language of § 1226(c)(1)(A)-(D).

*C. Better Late Than Never*

The government argued, both in its briefing and in the hearing on this matter, that "[e]ven if section 1226(c) requires immigration detention immediately upon the alien's release from criminal custody," a failure by the government to adhere to that deadline does not mean the government should be deprived of its power to act, particularly where public safety is at issue. As did the government in *Baquera*, counsel cites *Montalvo-Murillo* and *Dolan* for the principle that, as the Tenth Circuit put it, "late action is better than no action." 495 U.S. 711, 717-18 (1990); 571 F.3d 1022, 1023 (10th Cir. 2009); *aff'd*, 560 U.S. 605 (2010).

This was the argument adopted by the Third Circuit in *Sylvain v. Attorney Gen. of U.S.*, and it has already been thoroughly considered and rejected by this Court in the previous ruling on this subject. 714 F.3d 150 (3rd Cir. 2013). As the *Baquera* Order explained, the statute at issue in this matter is very different than the ones at issue in the "better late than never" line of cases. Here, the Court is not creating or imposing any judicially created penalty on the failure to act. Rather, the statute itself dictates the consequences. The government still has the power to detain Mr. Olmos, it simply must provide him with an individualized bond hearing to determine whether his situation warrants such detention in anticipation of removal. Again, I point to my earlier ruling for a fuller explanation of my reasoning on this issue. *Baquera v. Longshore*, 948 F. Supp. 2d 1258 (D. Colo 2013).

*C. Constitutional Claim*

Because I have decided in Mr. Olmos' favor on statutory grounds, I decline to reach his constitutional challenge.

**IV. Conclusion**

For the reasons set forth above, the Court GRANTED Mr. Olmos's petition for a writ of habeas corpus in its previous minute order.  (ECF No. 15.)

Dated this 17th day of January, 2014.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge